## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

ROYAL COATINGS, INC.                                    CIVIL ACTION

VERSUS                                                          No. 23-6394

STANCHEM, INC. ET AL.                                    SECTION I

### ORDER & REASONS

Before the Court are motions[1] by Omya Specialty Materials, Inc. ("Omya"), in its own capacity and on behalf of former entity Hall Technologies, Inc. ("Hall"), and StanChem, Inc. ("StanChem") (collectively, "defendants") to dismiss the claims against them pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6). Plaintiff Royal Coatings, Inc. ("RCI") opposes the motions.[2] Defendants filed replies in support of their motions.[3] For the reasons set forth below, the Court grants the motions to dismiss pursuant to Rule 12(b)(2).

### I.      BACKGROUND

This matter arises from a business relationship among Hall, StanChem, and RCI.[4] RCI alleges that, in 2016, it began working with Hempel USA Inc. ("Hempel"), a fellow manufacturer of protective coatings, to develop a railcar coating.[5] The complaint alleges that, in 2022, RCI approached StanChem, a resin polymer manufacturer, and Hall, StanChem's polymer distributor, about supplying the

---

[1] R. Doc. Nos. 20 (Omya's motion), 22 (StanChem's motion).
[2] R. Doc. Nos. 28 (opposition to Omya's motion), 26 (opposition to StanChem's motion).
[3] R. Doc. Nos. 31 (Omya's reply), 32 (StanChem's reply).
[4] *See generally* R. Doc. No. 1.
[5] *Id.* ¶ 2.

polymer that would be incorporated into the coating that RCI would sell to Hempel.[6] RCI alleges that StanChem and Hall agreed to the partnership and each signed a non-disclosure agreement ("NDA").[7] The complaint asserts that RCI then introduced StanChem and Hall to Hempel and the companies continued collaborating on the development of the railcar coating.[8]

RCI alleges that, despite the companies' use of RCI's essential data and secrets, in March 2023, RCI learned that StanChem and Hall had begun attempting to sell the polymer directly to Hempel, cutting RCI out of the transaction.[9] RCI alleges that StanChem and Hall violated the Defend Trade Secrets Act ("DTSA") and the Louisiana Unfair Trade Practices Act ("LUPTA"), breached their NDAs, and committed civil conspiracy.[10] The complaint further alleges that this Court has personal jurisdiction over StanChem and Omya[11] because the causes of action arise out of defendants' contacts with RCI in Louisiana.[12]

Omya filed a motion to dismiss pursuant to Rule 12(b)(2), arguing that this Court lacks personal jurisdiction over it.[13] More specifically, Omya argues that it does not have a presence in Louisiana large enough to subject it to general jurisdiction and

---

[6] *Id.* ¶ 6.
[7] *Id.* ¶ 7.
[8] *Id.* ¶ 8.
[9] *Id.* ¶¶ 6–11.
[10] *See generally id.*
[11] Hall was merged into Omya. R. Doc. No. 21-1, at 1–2.
[12] R. Doc. No. 1, ¶ 17.
[13] *See generally* R. Doc. No. 20-1.

2

none of its acts in Louisiana related to the alleged misconduct warrants an exercise of specific personal jurisdiction.[14]

In response to Omya's motion, RCI contends that Omya has sufficient minimum contacts with Louisiana through the formation of a continuing business relationship that contemplated a long-term association with ongoing obligations.[15] RCI also argues that this lawsuit arises out of Omya's contacts with Louisiana and therefore the exercise of personal jurisdiction over Omya would not be unfair or unreasonable.[16]

StanChem filed its own motion, asserting that RCI's complaint should be dismissed pursuant to Rules 12(b)(2) and 12(b)(6).[17] StanChem argues that, while the complaint asserts that it is subject to specific personal jurisdiction, the complaint fails to present any contacts with the State of Louisiana from which specific jurisdiction can arise.[18] StanChem also maintains that the complaint should be dismissed pursuant to Rule 12(b)(6) because RCI failed to adequately plead that it took reasonable steps to safeguard the secrecy of the conditional business opportunity pursuant to the DTSA,[19] because StanChem has not satisfied the "egregious actions" requirement of the LUPTA, and because RCI cannot prove an underlying tort in order to sustain a civil conspiracy claim.[20]

---

[14] *Id.* at 2.
[15] R. Doc. No. 28, at 7.
[16] *Id.* at 10–11.
[17] R. Doc. No. 22.
[18] R. Doc. No. 22-1, at 9.
[19] *Id.* at 10–11.
[20] *Id.* at 14.

RCI counters that, like Omya, StanChem has sufficient minimum contacts with Louisiana through the formation of a continuing business relationship that contemplated a long-term association with ongoing obligations.[21] Again, RCI argues that this lawsuit arises out of StanChem's contacts with Louisiana and therefore the exercise of personal jurisdiction over StanChem would not be unfair or unreasonable.[22]

Additionally, in response to StanChem's Rule 12(b)(6) arguments, RCI contends that the allegations in the complaint are sufficient to state a claim pursuant to the relevant statutes.[23] With respect to RCI's claim pursuant to the DTSA, RCI argues that it has alleged all the required elements of the cause of action.[24] Specifically, RCI asserts that it took reasonable steps to protect the confidentiality of the business opportunity by waiting to disclose the identity of Hempel and by requiring confidentiality with respect to RCI's trade secrets.[25] RCI also argues that it has satisfied the RUPTA's requirement of alleging "deceptive or unfair" trade practices by alleging that StanChem used RCI's confidential information to complete development of the alternative polymer and by alleging that StanChem falsely promised not to cut RCI out of the negotiation.[26] RCI also argues that the allegations

---

[21] R. Doc. No. 28, at 9.
[22] *Id.* at 11–12.
[23] *Id.* at 13.
[24] *Id.* at 14.
[25] *Id.*
[26] *Id.* at 17.

pursuant to the DTSA and the LUPTA are sufficient to pursue a civil conspiracy theory of recovery.[27]

## II.   STANDARD OF LAW

### a. Rule 12(b)(2)

Pursuant to Rule 12(b)(2), a claim against a defendant over whom the court lacks personal jurisdiction must be dismissed. Personal jurisdiction "is an essential element of the jurisdiction of a district court, without which it is powerless to proceed to an adjudication." *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 584 (1999) (quoting *Emps. Reinsurance Corp. v. Bryant*, 299 U.S. 374, 382 (1937)) (cleaned up). "When a nonresident defendant presents a motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing the district court's jurisdiction over the nonresident." *Stuart v. Spademan*, 772 F.2d 1185, 1192 (5th Cir. 1985).

"When the district court decides the defendant's motion without an evidentiary hearing, the plaintiff['s] burden is met by presenting a prima facie case for personal jurisdiction." *Thompson v. Chrysler Motors Corp.*, 755 F.2d 1162, 1165 (5th Cir. 1985). "The allegations of the complaint, except insofar as controverted by opposing affidavits, must be taken as true, and all conflicts in the facts must be resolved in favor of the plaintiff[] for purposes of determining whether a prima facie case for personal jurisdiction has been established." *Id.* "The court may determine the jurisdictional issue by receiving affidavits, interrogatories, depositions, oral

---

[27] *Id.*

5

testimony, or any combination of the recognized methods of discovery." *Id.* (citing *Washington v. Norton Mfg. Co.*, 588 F.2d 441, 443 (5th Cir. 1979)).

"A federal district court sitting in diversity may exercise personal jurisdiction over a nonresident defendant if (1) the long-arm statute of the forum state confers personal jurisdiction over that defendant; and (2) exercise of such jurisdiction by the forum state is consistent with due process under the United States Constitution." *Latshaw v. Johnston*, 167 F.3d 208, 211 (5th Cir. 1999). "Because Louisiana's long-arm statute, La. R.S. § 13:3201, *et seq.*, extends jurisdiction to the full limits of due process, the Court's focus is solely on whether the exercise of its jurisdiction in this case satisfies federal due process requirements." *Jackson v. CN Worldwide, Inc.*, No. CV 22-4763, 2023 WL 2709833, at *1 (E.D. La. Mar. 30, 2023) (Vance, J.) (citing *Dickson Marine Inc. v. Panalpina, Inc.*, 179 F.3d 331, 336 (5th Cir. 1999)).

"The Due Process Clause of the Fourteenth Amendment permits the exercise of personal jurisdiction over a nonresident defendant when (1) that defendant has purposefully availed himself of the benefits and protections of the forum state by establishing 'minimum contacts' with the forum state; and (2) the exercise of jurisdiction over that defendant does not offend 'traditional notions of fair play and substantial justice.'" *Latshaw*, 167 F.3d at 211 (quoting *International Shoe Co. v. State of Washington*, 326 U.S. 310, 316 (1945)).

"There are two ways to establish minimum contacts: specific jurisdiction and general jurisdiction." *Jackson*, 2023 WL 2709833, at *2 (citing *Wilson v. Belin*, 20 F.3d 644, 647 (5th Cir. 1994)). General jurisdiction arises when "the defendant's

6

contacts with the forum state are both 'continuous and systematic.'" *Wilson*, 20 F.3d at 647 (5th Cir. 1994). "Contacts between a defendant and the forum state must be 'extensive' to satisfy the 'continuous and systematic' test." *Jackson*, 2023 WL 2709833, at *2 (citing *Submersible Sys., Inc. v. Perforadora Cent., S.A. de C.V.*, 249 F.3d 413, 419 (5th Cir. 2001)).

By contrast, "specific personal jurisdiction is a claim-specific inquiry." *McFadin v. Gerber*, 587 F.3d 753, 759 (5th Cir. 2009). "Specific jurisdiction is appropriate when the nonresident defendant's contacts with the forum state arise from, or are directly related to, the cause of action." *Wilson*, 20 F.3d at 647 (5th Cir. 1994)). The U.S. Fifth Circuit Court of Appeals has explained that courts analyzing specific jurisdiction should ask three questions: "(1) Did the defendant have minimum contacts with the forum state—purposely directing its activities toward the forum state or purposely availing itself of the privilege of conducting activities therein? (2) Did the plaintiff[']s cause of action arise out of or result from the defendant's forum-related contacts? (3) Would the exercise of personal jurisdiction be reasonable and fair?" *Guidry v. U.S. Tobacco Co.*, 188 F.3d 619, 625 (5th Cir. 1999); *see also Admar Int'l, Inc. v. Eastrock, L.L.C.*, 18 F.4th 783, 786 (5th Cir. 2021). "Minimum contacts may be established by actions, or even just a single act, by the nonresident defendant that 'purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws.'" *Jackson*, 2023 WL 2709833, at *2 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)).

### b. Rule 12(b)(6)

Rule 12(b)(6) allows for dismissal of a complaint for "failure to state a claim upon which relief can be granted." "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation and internal quotations omitted). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Culbertson v. Lykos*, 790 F.3d 608, 616 (5th Cir. 2015) (citation and internal quotations omitted).

"[T]he face of the complaint must contain enough factual matter to raise a reasonable expectation that discovery will reveal evidence of each element of the plaintiffs' claim." *Hi-Tech Elec., Inc v. T&B Constr. & Elec. Servs., Inc.*, No. 15-3034, 2017 WL 615414, at *2 (E.D. La. Feb. 15, 2017) (Vance, J.) (citing *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 255–57 (5th Cir. 2009)). A complaint is insufficient if it contains "only labels and conclusions, or a formulaic recitation of the elements of a cause of action." *Whitley v. Hanna*, 726 F.3d 631, 638 (5th Cir. 2013) (citation and internal quotations omitted). The complaint "must provide the defendant with fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 346 (2005) (internal quotations omitted).

In considering a motion to dismiss, a court views the complaint "in the light most favorable to [the] plaintiff, accepting as true all well-pleaded factual allegations and drawing all reasonable inferences in [the] plaintiff's favor." *Lovick v. Ritemoney Ltd.*, 378 F.3d 433, 437 (5th Cir. 2004). A court must limit its review to "the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010) (citing *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498–99 (5th Cir. 2000)).

## III.   ANALYSIS

Because jurisdiction is a threshold matter, the Court will address whether it has personal jurisdiction over defendants before reaching the issue of whether RCI's complaint has adequately stated a claim pursuant to Rule 12(b)(6). *See Pervasive Software Inc. v. Lexware GmbH & Co. KG*, 688 F.3d 214, 232 (5th Cir. 2012) ("[P]ersonal jurisdiction claims are 'threshold grounds for denying audience to a case on the merits,' and require that the courts reach the threshold claims before reaching claims on the merits.") (quoting *Ruhrgas AG*, 526 U.S. at 584–85).

RCI's complaint alleges that this Court "may exercise personal jurisdiction over StanChem and [Omya] because the causes of action arise specifically out of their contacts with RCI in Louisiana."[28] RCI has not alleged that defendants' contacts with Louisiana are "continuous and systematic," justifying general jurisdiction. *See*

---

[28] R. Doc. No. 1, ¶ 17.

*Wilson*, 20 F.3d at 647 (5th Cir. 1994)). Rather, the complaint alleges that there are minimum contacts giving rise to specific jurisdiction in Louisiana.

As discussed previously, to determine if there is specific jurisdiction, courts in the Fifth Circuit ask three questions: "(1) Did the defendant have minimum contacts with the forum state—purposely directing its activities toward the forum state or purposely availing itself of the privilege of conducting activities therein? (2) Did the plaintiff[']s cause of action arise out of or result from the defendant's forum-related contacts? (3) Would the exercise of personal jurisdiction be reasonable and fair?" *Guidry*, 188 F.3d at 625. When the analysis is based on contacts made through the internet, the Court must consider "the level of interactivity and commercial nature of the exchange of information." *Admar Int'l, Inc.*, 18 F.4th at 786. "The touchstone of personal jurisdiction remains the existence of 'some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'" *Id.* (quoting *Pervasive Software*, 688 F.3d at 222).

Accordingly, to determine whether it has specific jurisdiction over defendants, the Court first considers whether defendants purposely directed activities toward Louisiana or purposely availed themselves of the privileges of conducting activities in Louisiana. "The 'minimum contacts' inquiry is fact intensive and no one element is decisive; rather the touchstone is whether the defendant's conduct shows that it 'reasonably anticipates being haled into court.'" *Gerber*, 587 F.3d at 759 (quoting *Luv N'care, Ltd. v. Insta-Mix, Inc.*, 438 F.3d 465, 470 (5th Cir. 2006)). "The defendant

'must not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts, or of the 'unilateral activity of another party or third person.'" *Id.* (quoting *Electrosource, Inc., v. Horizon Battery Techs., Ltd.*, 176 F.3d 867, 871–72 (5th Cir. 1999)).

Omya argues that it has not purposely directed conduct to Louisiana because Omya is not registered to do business in Louisiana, Omya has no bank accounts in Louisiana, and Omya has not shipped polymer to Louisiana.[29] Omya notes that the NDA it signed said that the agreement would be enforced in accordance with Missouri law and did not subject Omya to Louisiana jurisdiction.[30] While Omya admits that it engaged in telephonic and electronic communications with RCI, Omya argues that these communications do not demonstrate that Omya purposely availed itself of the privileges of conducting activities in Louisiana because the fact that RCI was located in Louisiana during the communications was a mere fortuity.[31]

In its motion to dismiss, StanChem argues that the complaint lacks any allegations that it committed any actions in the State of Louisiana relevant to this litigation.[32] StanChem claims that all research and actions allegedly undertaken by StanChem in the complaint occurred in Connecticut.[33] StanChem argues that RCI

---

[29] R. Doc. No. 20-1, at 10.
[30] *Id.* at 11. In contrast, StanChem's NDA said it would be enforced pursuant to the laws of Louisiana. R. Doc. No. 1-2, at 2.
[31] *Id.* at 13.
[32] R. Doc. No. 22-1, at 10.
[33] *Id.*

seeks to subject StanChem to jurisdiction in Louisiana based on RCI's contacts with Louisiana instead of StanChem's contacts.[34]

In its responses, RCI argues that its complaint alleges that StanChem and Omya entered into a joint and continuing business venture and executed an NDA with RCI's Louisiana-based employees.[35] RCI also argues that Omya and StanChem engaged in numerous business activities with the Louisiana company through the internet, subjecting Omya and StanChem to personal jurisdiction in Louisiana.[36]

RCI cites *Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985) to support its argument that, because defendants knowingly entered into a contract with a Louisiana company and their alleged misconduct had the foreseeable consequence of causing harm in Louisiana, they are subject to personal jurisdiction in Louisiana.[37] In *Burger King*, the U.S. Supreme Court held that a Michigan franchisee of Burger King, a Florida corporation, was subject to personal jurisdiction in Florida. *Burger King Corp.*, 471 U.S. at 479–80. The Court reasoned that there was purposeful availment because the franchisee had reached out and negotiated with the Florida corporation for the purchase of a twenty-year franchise that would be heavily regulated by a Florida corporation and that the Florida corporation would foreseeably be harmed by his failure to make contractually required payments and his use of confidential business information. *Id.*

---

[34] *Id.* at 11.
[35] R. Doc. No. 26, at 7; R. Doc. No. 28, at 5.
[36] R. Doc. No. 26, at 9; R. Doc. No. 28, at 9.
[37] R. Doc. No. 26, at 7; R. Doc. No. 28, at 4.

Unlike in *Burger King*, it is not clear that the parties in the present matter had established a long-term business partnership prior to this lawsuit. RCI's complaint alleges that it reached out to StanChem and Hall concerning a potential partnership opportunity and that the parties began collaborating, but the complaint does not allege that the parties had reached an agreement concerning a long-term relationship.[38] Additionally, the NDAs upon which RCI relies, and which RCI filed along with its complaint, merely state that the parties "intend to engage in discussions concerning a *potential* business relationship."[39] Furthermore, while the franchisee "reached out" to a Florida corporation in *Burger King*, RCI's complaint alleges that RCI—the Louisiana corporation—reached out to StanChem and Omya about the business opportunity.[40]

RCI also relies on *Central Freight Lines Inc. v. APA Transport Corp.*, 322 F.3d 376 (5th Cir. 2003) to argue that defendants are subject to specific jurisdiction in Louisiana because they allegedly created continuing obligations with substantial connections to Louisiana.[41] "In *Central Freight*, the contract contemplated that the plaintiff would make shipments from Texas on behalf of third-party Texas customers." *Moncrief Oil Int'l Inc.*, 481 F.3d at 311. "The plaintiff's Texas location was strategically advantageous to the defendant and was the basis for the agreement, [ ] suggesting that the defendant had purposefully availed itself of doing business in

---

[38] *See generally* R. Doc. No. 1.
[39] R. Doc. No. 1-1, at 1 (emphasis added); R. Doc. No. 1-2, at 1.
[40] R. Doc. No. 1, ¶ 30.
[41] R. Doc. No. 26, at 8; R. Doc. No. 28, at 7.

Texas." *Id.* In contrast with *Central Freight*, RCI has not demonstrated that defendants' contacts with Louisiana went beyond RCI's affiliation with Louisiana.

RCI also suggests that personal jurisdiction is proper based on defendants' contacts with RCI using the internet. In support of this argument, RCI cites *Zippo Manufacturing Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119 (W.D. Pa. 1997) and *CompuServe, Inc. v. Patterson*, 89 F.3d 1257 (6th Cir. 1996).[42]

In *Zippo*, the Western District of Pennsylvania addressed the exercise of jurisdiction based on the use of internet webpages to make contacts with the forum state and set forth a spectrum for categorizing internet usage. The U.S. Fifth Circuit Court of Appeals has since adopted this spectrum. *See Mink v. AAAA Dev. LLC*, 190 F.3d 333, 336 (5th Cir. 1999). "At the one end of the spectrum, there are situations where a defendant clearly does business over the [i]nternet by entering into contracts with residents of other states which 'involve the knowing and repeated transmission of computer files over the [i]nternet.'" *Id.* (quoting *Zippo*, 952 F. Supp. at 1124). "In this situation, personal jurisdiction is proper." *Id.* "At the other end of the spectrum, there are situations where a defendant merely establishes a passive website that does nothing more than advertise on the [i]nternet." *Id.* "With passive websites, personal jurisdiction is not appropriate." *Id.* "In the middle of the spectrum, there are situations where a defendant has a website that allows a user to exchange information with a host computer." *Id.* "In this middle ground, 'the exercise of jurisdiction is determined by the level of interactivity and commercial nature of the

---

[42] R. Doc. No. 26, at 9; R. Doc. No. 28, at 8.

exchange of information that occurs on the Website.'" *Id.* (quoting *Zippo*, 952 F.Supp. at 1124). "*Zippo* seeks to answer the question: Has the defendant targeted the forum state?" *Admar Int'l, Inc.*, 18 F.4th at 786.

As explained, courts use the categories set forth in *Zippo* to analyze business conducted through webpages. In the present matter, no webpage was used to enter into contracts or advertise business. Rather, RCI argues that *Zippo* supports the contention that emails regarding the composition of the product and other confidential information constitute business activity conducted via the internet.[43] However, the U.S. Fifth Circuit Court of Appeals has explained that "[a]n exchange of communications in the course of developing and carrying out a contract [ ] does not, by itself, constitute the required purposeful availment of the benefits and protections of [Louisiana] law." *Moncrief Oil Int'l Inc. v. OAO Gazprom*, 481 F.3d 309, 312 (5th Cir. 2007). Additionally, to establish that personal jurisdiction is proper, "plaintiff cannot be the only link between the defendant and the forum." *Walden v. Fiore*, 571 U.S. 277, 285 (2014). Defendants' conduct "must form the necessary connection with the forum [s]tate that is the basis for its jurisdiction over [them.]" *Id.* at 286. Jurisdiction cannot be based on "contacts ma[de] by interacting with other persons affiliated with the [s]tate." *Id.* The communications upon which RCI relies to establish jurisdiction are not connected to Louisiana in any way beyond RCI's affiliation with the state. Accordingly, these internet communications, by themselves, are not sufficient to establish personal jurisdiction over defendants.

---

[43] R. Doc. No. 26, at 11; R. Doc. No. 28, at 9.

In *CompuServe*, the U.S. Sixth Circuit Court of Appeals held that the exercise of personal jurisdiction in Ohio was appropriate when the defendant had entered into a relationship with an Ohio-based company, CompuServe, to sell electronic products to CompuServe subscribers. 89 F.3d at 1260. With respect to the minimum contacts analysis, the Sixth Circuit explained that the plaintiff created a contract with an Ohio company to be governed by Ohio law, paid for a subscription to CompuServe, repeatedly sent his computer software to the Ohio company over the course of three years, advertised his software on the CompuServe system, and made demands of CompuServe via electronic and mail messages. *Id.* at 1264. The court explained that "[t]hough all this happened with a distinct paucity of tangible, physical evidence, there can be no doubt that [the plaintiff] purposefully transacted business in Ohio." *Id.* at 1264–65.

In contrast to *CompuServe*, RCI's complaint does not allege any specific facts that demonstrate that defendants purposely directed activities at Louisiana. In RCI's responses to the motions to dismiss, RCI states that defendants had minimum contacts because they signed an NDA, engaged in business activities through the internet, and emailed with RCI.[44] However, "[i]t is clearly established that 'merely contracting with a resident of the forum state does not establish minimum contacts.'" *Gerber*, 587 F.3d at 756 (quoting *Moncrief Oil Int'l Inc.*, 481 F.3d at 311). Additionally, as previously discussed, RCI's affiliation with Louisiana cannot be the basis for personal jurisdiction over defendants unless they themselves have contacts with the

---

[44] R. Doc. No. 26, at 11; R. Doc. No. 28, at 9.

state. Since RCI relies on its own affiliation with Louisiana to establish personal jurisdiction over defendants, RCI has not made the initial showing that personal jurisdiction exists.

Because the Court finds that defendants did not have minimum contacts with Louisiana, the Court need not analyze whether this lawsuit arises out of or result from the alleged contacts or whether the exercise of personal jurisdiction over defendants is fair and reasonable. [45]

## IV.   CONCLUSION

Accordingly,

**IT IS ORDERED** that the motions to dismiss are **GRANTED**. The above-captioned matter is **DISMISSED WITHOUT PREJUDICE.**

New Orleans, Louisiana, March 25, 2024.

_____
**LANCE M. AFRICK**
**UNITED STATES DISTRICT JUDGE**

---

[45] Since the Court is without jurisdiction over the claims against defendants, the Court will not reach the merits of the claims by addressing defendants' Rule 12(b)(6) arguments. *See Pervasive Software Inc.*, 688 F.3d at 232 ("[P]ersonal jurisdiction claims are 'threshold grounds for denying audience to a case on the merits,' and require that the courts reach the threshold claims before reaching claims on the merits.") (quoting *Ruhrgas AG*, 526 U.S. at 584–85).